NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0139n.06
Filed: February 17, 2009

No. 08-5003

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CROSSVILLE MEDICAL ONCOLOGY, P.C., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| GLENWOOD SYSTEMS, LLC, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Crossville Medical Oncology, P.C. ("Crossville") appeals the dismissal of its claims against Glenwood Systems, LLC ("Glenwood LLC"). Crossville argues the district court erred in holding that Glenwood LLC could enforce an arbitration clause in a contract to which it was not a signatory. We affirm.

I.

A.

Glenwood LLC is a Connecticut limited liability company that provides medical billing services. Nat Loganathan formed the company in 1998, and is its sole member and owner. In 2000, Loganathan formed a Delaware corporation named "Glenwood Systems, Inc." ("Glenwood Inc."). Loganathan was the corporation's sole shareholder. This Glenwood entity did not conduct any

business, issue any stock or dividends, file tax returns, or maintain a bank account, and had no employees. According to Loganathan, however, he used the two Glenwood entities' names "interchangeably[,]" and Glenwood LLC "[f]rom time to time" did business under the name "Glenwood Systems, Inc." J.A. 194, 243.

On January 12, 2004, Crossville entered into a written agreement with "Glenwood Systems, Inc." J.A. 29-30. Under the agreement, "Glenwood" would provide medical billing services to Crossville. The agreement provided that any dispute arising out of the agreement would be resolved by an arbitrator in Connecticut.

Glenwood LLC then provided billing services to Crossville for several months. Crossville later claimed that those services were deficient, and terminated the agreement.

B.

Crossville thereafter filed a complaint against "Glenwood Systems, L.L.C., d/b/a Glenwood Systems, Inc." in Tennessee state court. Glenwood LLC removed the case to federal court, and filed an answer and counterclaims. In its answer, Glenwood LLC asserted as an affirmative defense that "the contract requires the parties to resolve any and all disputes, which arise out of or in connection with this contract, in arbitration." J.A. 52.

Over the next several months, Glenwood LLC responded to motions for a default judgment and to dismiss its counterclaims for lack of standing, and itself filed a motion to extend the discovery deadline. Eight months after removing the case to federal court, Glenwood LLC moved to refer the case to arbitration, pursuant to the agreement's mandatory arbitration clause. The district court granted the motion. More than a year and a half later, however, and on the day before the arbitration

hearing was scheduled to commence, Crossville filed a motion in the district court to return the case to the court on the ground that Glenwood LLC was not a party to the arbitration agreement. Crossville also filed a motion for leave to amend its complaint to add claims against Glenwood LLC. The district court denied Crossville's motions and dismissed the case without prejudice. This appeal followed.

## II.

### A.

"We review *de novo* a district court's decisions regarding both the existence of a valid arbitration agreement and the arbitrability of a particular dispute." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000). "In deciding whether [arbitration] agreements are enforceable, we examine applicable state-law contract principles." *Id.* at 314.

### B.

Crossville first argues that Glenwood LLC waived its right to arbitrate by engaging in litigation for eight months before demanding arbitration. A party waives its right to arbitration by participating in litigation to such an extent that its actions are "completely inconsistent with any reliance" on its right to arbitrate and cause the opposing party to suffer prejudice. *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002). "[W]aiver of the right to arbitration is not to be lightly inferred[,]" because "[t]here is a strong presumption in favor of arbitration[.]" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003).

Here, Glenwood LLC participated in litigation when it filed an answer and counterclaims, responded to two motions, and filed a motion to extend the discovery deadline. But neither party had served any discovery requests, exchanged documents, or deposed any witnesses before Glenwood LLC moved to refer the case to arbitration. Glenwood LLC also asserted the arbitration agreement as an affirmative defense in its answer. We therefore hold that its actions were not inconsistent with its right to arbitrate and that Crossville was not prejudiced by Glenwood LLC's delay in asserting that right. Consequently, Glenwood LLC did not waive its right to arbitrate.

C.

Crossville also argues that Glenwood LLC cannot enforce the agreement's arbitration clause because it was not a signatory to the agreement. This argument is foreclosed by precedent.

"[N]onsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). Applying those principles, we rejected an argument identical to Crossville's in *Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862 (6th Cir. 1990). There, the plaintiff argued that the defendant, JVB Industries, "had no right to compel arbitration of the business destruction claims because JVB was not a party to the construction contracts." *Federated*, 894 F.2d at 870. The plaintiff argued that only TAB—a separate entity established by JVB's owner—executed the contracts, and that therefore only TAB could enforce the arbitration provisions in those contracts. *Id.* We disagreed, holding that "JVB and TAB were alter egos" and that JVB was "the real party in interest" to the contracts. *Id.* We noted that TAB and JVB "were closely interconnected," that they "both operated out of the same office[,]" and that TAB "had no assets and no shareholders or management different from those of

JBV." *Id.* A single owner "controlled both corporations, and TAB was a mere instrumentality of JVB." *Id.* Thus, JVB "was a proper party to the arbitration[,]" despite the fact that it had not executed the contracts containing the arbitration provision. *Id.*

The same is true here. Glenwood Inc. was "closely interconnected" with Glenwood LLC. The limited liability company's sole member incorporated Glenwood Inc., and was the corporation's sole shareholder and director. The two entities shared an office and address. Glenwood Inc. did not conduct any business, issue any stock or dividends, file tax returns, or maintain a bank account, and had no employees. It was a "mere instrumentality" and "alter ego" of Glenwood LLC. *Id.*

That is true regardless of whether Tennessee, Connecticut, or Delaware law applies in determining whether the arbitration agreement is enforceable. Each of those states recognizes the same alter-ego and instrumentality principles applied in *Federated*. *See Cont'l Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625, 631-32 (Tenn. 1979); *Young v. Metro. Prop. and Cas. Ins. Co.*, 758 A.2d 452, 456-57 (Conn. App. 2000); *NAMA Holdings, LLC v. Related World Market Ctr.*, 922 A.2d 417, 432-33 (Del. Ch. 2007). *Federated* therefore controls here.

D.

Finally, Crossville argues that the district court erred in denying its motion to amend its complaint to "state proper claims against Glenwood LLC." Appellant's Br. at 17. As shown above, however, Glenwood LLC properly invoked the agreement's arbitration clause. Crossville's amendment therefore would have been futile, and the district court did not abuse its discretion in denying Crossville's motion.

The judgment of the district court is affirmed.